Gaston, Judge.
 

 The question presented in this case is, whether the evidence submitted to the jury was sufficient in law to show that the way obstructed by the defendant was a public road. (His Honor here stated the facts of the case as above, and proceeded as follows :) The County Courts of this state have full power to order the laying out of public roads, where necessary; to discontinue such roads
 
 *549
 
 as shall be found useless, and to alter roads so as to make them more useful, as often as occasion shall require. Before the passing of the act of 1834, (see 1
 
 Rev. Stat.
 
 c. 104, sec. 7,) the mode of proceeding directed to be pursued on an application to turn or alter an existing road, was as follows. The applicant was required to file his petition in writing, and to give notice thereof to those over whose lands the road might pass. If the Court, upon hearing of the petition, approved thereof, a jury of freeholders was to be summoned, who should upon oath lay off the road to the greatest advantage of the inhabitants, and ascertain the damage which individuals might sustain thereby, and report their proceedings to the Court. Upon this report being confirmed by the Court, and upon the overseer certifying, or (if
 
 he
 
 refused to certify,) upon the Court being satisfied from the report of commissioners by the Court for that purpose appointed, that such new or altered road was in good and sufficient order, the road laid off by the jury became the public road, instead of the old one.
 

 In the session of 1834-5, an act was passed by which it is enacted, than any person through whose farm or land a public road passes, may turn or alter the same by laying off the road as he proposes, so, however, as not to interfere with the land of any other person, and put it in a good and proper condition as a public highway: but before he shall close up, or in any manner obstruct, the former road, he shall apply to a justice of the peace, whose duty it shall be to summon two disinterested freeholders, to attend on the premises on a given day, who after havingtaken an oath to that effect,shall with himself, view and examine the road as proposed to be altered or turned, and report its condition, and such other facts connected with the case, as may be necessary to determine whether such alteration should be made, to the next Court of Picas and Quarter Sessions, to be held for the county; and upon consideration of such report, the Court may sanction the proposed alteration, or refuse it; provided, that the overseer of the road shall have five days notice of the time, and place of meeting, of the
 
 *550
 
 justice and freeholders. If the case before
 
 as
 
 involved only the inquiry, whether the proceedings exhibited by the record, conformed to the requisitions of the act, it would be an inquiry free from difficulty. In’ the first place, we hold it to be clear, that the act applies
 
 only
 
 where the road proposed to be changed, as well as that offered to be substituted for it, are wholly within the farm or upon the land of the petitioner, so that no individual is likely to receive injury from the change; but the sole question is, whether the prayer of the petitioner may be granted without inconvenience to the public. As the change is not to interfere with the land of any other person, notice to the overseer, the official guardian of the public convenience, was deemed sufficient, and as such a change must, in general be inconsiderable, it was supposed that the trouble and expense of a jury might safely be dispensed with.
 

 In a petition to turn a road under the act of 1834, (1
 
 Rev. Stat.
 
 c. 104, sec. 7,) it must appear that the road proposed to be changed, as well as that offered to be substituted, are wholly upon the land of the petitioner; thefree-must also andThe”’ overseer of harenotice
 

 On the face of these proceedings, it does not appear that roac^ inlended to be shut up passed wholly, or in part, through the land of Bitting, and it does appear, that the roat* intended to be in lieu of it, did not pass wholly through his land. Besides, the express requirements that the freeholder's should be sworn, that they and the justice should view the proposed road, and report its actual condition, and that the overseer should have five days previous notice of such view, most important requirements in behalf of the public, are essential and must not be neglected. But the question for us is not, whether upon such irregular and defective proceedings, the Court ought to have sanctioned the change of the road, nor whether the order for such a change ought not to be set aside, but whether, upon the record offered, the road has been changed as alleged. Acts formally done by a tribunal which has power to do them —however voidable because of error or irregularity — are valid, until they be formally avoided. The alteration of roads, is a subject over which the County Courts have full jurisdiction, and every altered road declared by them to be a public road, must, until such declaration be rescinded or reversed, be regarded by every citizen as a public road. It is enough that the way obstructed is a
 
 *551
 
 public road
 
 de facto,
 
 to constitute the obstruction of it a public nuisance. Upon the best consideration which we have been ablé to give to these proceedings, we are of opinion, that they do not show an adjudication of the Court by which this private way has been made a public road. If there be any such, then the old road has been discontinued, and may be lawfully stopped, for the subject-matter of the adjudication was not the laying off of a new, but an
 
 alteration
 
 of the existing road. If there be such, it is not express, but to be inferred from the confirmation of the recommendation, and the ordering of that recommendation to be filed. Now if this document had set forth that the way as proposed to be turned, had been laid off and put into a good and proper condition for a public highway, and had described with reasonable certainty, the road so laid off and put in order, the confirmation of such a report might be deemed an adjudication establishing the proposed alteration. But in these respects it is utterly insufficient. It states no road as having been prepared ; it describes, not where the altered road is to run, except that it is to be brought nearer the house of Bitting; and it prays only that an order may be made “ for turning the road.” The Court is not thereby called upon to sanction or refuse any specific alteration, and its"approbation of the prayer in this document, cannot be considered as a sanction of a specific alteration. It ought to appear upon the face of the record, that the Court was not only willing, that a change of the road might be made, but had definitely accepted and established a new, in the place and stead of the old road. The public convenience is too deeply concerned in matters of this kind to permit us to
 
 infer
 
 a solemn adjudication from such loose, defective, and uncertain proceedings. The right of the public in the old highway is not to be taken away thus lightly.
 

 If the transaction which we are considering had been an old one, and the former road had been shut up, and the new one accepted by the community with the acquiescence of the defendant, before the obstruction complained of, the case might have presented a different aspect. Under such circumstances, perhaps, it might have been
 
 *552
 
 held, that the defendant had dedicated his land to the use of the public as a highway, and that he was guilty of obstructing a highway
 
 defacto.
 
 But the evidence offered upon the trial did not, in our opinion, warrant a finding that the way obstructed was a public road. The judgment is to be reversed, and a new trial ordered.
 

 Per Curiam. Judgment reversed.